UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20022-CIV-MOORE/SIMONTON

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Plaintiff,

vs.

MARK YACHT CLUB ON BRICKELL BAY, INC.,
and THE CONTINENTAL GROUP, INC.

    Defendants.

_____/

THE CONTINENTAL GROUP, INC.,

    Counter-plaintiff,

vs.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Counter-defendant.

_____/

## ORDER GRANTING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant/Counter-plaintiff The Continental Group, Inc.'s ("Continental") Motion for Summary Judgment (dkt # 41), and Plaintiff/Counter-defendant Liberty Mutual Insurance Company's Motion for Summary Judgment (dkt # 42). Continental filed a Response (dkt # 46) and a Reply (dkt # 53). Defendant Mark Yacht Club on Brickell Bay, Inc. ("Mark Yacht") did not file a Response. Liberty filed a combined Response

and Reply (dkt # 49), which the Clerk of Court re-cast as two separate filings, docketing the Response at docket entry # 49 and the Reply at docket entry # 51. See Clerk's Notice (dkt # 52).

UPON CONSIDERATION of the Motions, Responses, Replies, pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND

This is a declaratory judgment action filed by an insurance company, Liberty, seeking to determine the existence and scope of its duty to defend an insured, Continental, in an underlying state court lawsuit. The underlying suit arises out of alleged structural defects at the Mark Yacht Club on Brickell Bay, located at 1155 Brickell Bay Drive, Miami, Florida (the "Project"). The Project was developed by The Yacht Club on Brickell Bay Associates, Ltd., TRG Brickell Bay Ltd., and TRG Brickell, Inc. (collectively, the "developer"). The buildings that comprised the Project were designed by Hufsey-Nicolaides-Garcia-Suarez Associates, Inc. (the "engineer") and constructed by Chase Construction Company (the "contractor").

Continental was hired as the property's manager in 2001. Continental and Mark Yacht thereafter entered into a series of one-year contracts from 2001 to September 25, 2005 (collectively "the Contract").[1] Under the Contract, Continental was to manage, operate, and maintain the Mark Yacht Club condominium complex. Continental's duties included, in pertinent part, the following:

- [E]ngage and supervise all persons as needed . . . necessary to properly maintain and operate the Condominium, according to [Continental's] reasonable judgment . . .;

- Cause those portions of the common elements of the Condominium ("Common Elements"), to be maintained and repaired including, but not limited to,

---

[1] The 2005 contract, which the Parties do not dispute is identical to the 2001-2002 contract in effect at the time of the events giving rise to the underlying suit, is attached to the Complaint as Plaintiff's Exhibit B, at 1-26 (dkt # 1-3).

2

      landscaping, painting, roofing, cleaning and such other normal and extraordinary maintenance and repair work as may be necessary . . .;

- [M]ake emergency repairs and replacements which, according to [Continental's] reasonable belief, are required to eliminate or avoid danger to persons or to property, or as are necessary in [Continental's] reasonable belief for the preservation and safety of [Mark Yacht] or for the safety of persons or in order to avoid suspension of any necessary service to [Mark Yacht] . . .;

- Purchase, as needed, on behalf of [Mark Yacht], all supplies and materials as may be necessary or desirable for the maintenance, upkeep, repair, replacement and preservation of the Condominium property . . .;

- Solicit, analyze and negotiate, and supervise contracts on behalf of [Mark Yacht], as needed or monthly, for services reasonably necessary with respect to the operation, maintenance, upkeep, repair, replacement, and preservation of the Condominium property.  All contracts shall be approved and executed by the Board of Directors.;

- Perform routine property inspections and make recommendations to the Board of Directors as to maintenance and improvements to the Common Elements.

Management Contract, ¶¶ 3.1, 3.4, 3.6, 3.7, 3.17, Pl.'s Ex. B, at 1-3 (dkt # 1-3).  On February 12, 2002, Mark Yacht took control of the Project, at which time it became aware of various alleged defects and deficiencies in the design or construction of the Project.  In 2003, Mark Yacht filed a lawsuit seeking damages for the deficiencies, naming as defendants the engineer, developer, and contractor.  That action, styled Mark Yacht Club on Brickell Bay, Inc. v. The Yacht Club at Brickell Bay Associates, Ltd., et al., No. 03-03931 CA 10 ("the underlying suit"), is currently pending in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.

      On May 8, 2007, Mark Yacht amended its complaint in the underlying suit, naming Continental as an additional defendant.  Mark Yacht sued Continental for contractual and common law indemnification after the other defendants asserted as affirmative defenses that the deficiencies in the Project were either caused by, or not mitigated properly due to, improper or inadequate maintenance by Continental.  A copy of the amended complaint in the underlying suit

(the "underlying complaint") is attached to Liberty's Complaint in this action as Plaintiff's Exhibit A (dkt # 1-2).

The alleged defects which prompted the underlying suit are numerous, and "include, without limitation, the common elements of the Project, the roof and structural components of the Project, the mechanical, electrical, plumbing, heating, ventilating, and air conditioning elements . . . " Underlying Complaint ¶ 17, Pl.'s Ex. A at 5 (dkt # 1-2). The underlying complaint does not elaborate upon the nature of the defects, stating instead that they are described in detail in a series of voluminous reports believed to be in the possession of the defendants, and therefore not attached. See id. at ¶¶ 16-17. The underlying complaint goes on to state that the defects include deficiencies "relating to the water cooling tower, water condenser system and pipes, balconies, balcony railings, seawall, pool and pool deck, planters, Jacuzzi, lobby fountain, elevators, expansion joints, mold and indoor air quality, parking garage, structural cracking, water intrusion, tennis court, roof, and other miscellaneous items." Id. at ¶¶ 24, 31, 40, 50, 58, 74, 85, 93, 101.

Liberty entered into a commercial general liability insurance contract with Continental, which was in effect from October 21, 2001, through October 25, 2002 (the "Policy"). A copy of the Policy is attached to Liberty's Complaint as Plaintiff's Exhibit C, at 27-82 (dkt # 1-3). Under the Policy, Liberty agreed to indemnify Continental for "sums that [Continental] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" within the scope of the Policy, and to defend Continental against lawsuits seeking those damages. Id. at 36. The scope of the Policy's coverage and exclusions is the central issue in dispute here, and the relevant terms of the Policy are discussed in detail below.

On January 6, 2009, Liberty filed the instant action, seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as to (1) whether it is obligated to defend Continental in the underlying suit, and (2) its duty, if any, to indemnify Continental should Continental ultimately incur liability in the underlying suit. On January 28, 2009, Continental filed a counterclaim against Liberty, also seeking a declaratory judgment as to Liberty's obligations under the Policy.[2] Mark Yacht and Continental subsequently moved to stay the portion of these proceedings relating to Liberty's duty of indemnification. On April 24, 2009, this Court entered an Order (dkt # 33) granting Mark Yacht's and Continental's motions and staying the indemnification aspect of this case on the basis that a judgment on that issue would be premature pending resolution of the underlying suit. Liberty and Continental filed the instant Motions for Summary Judgment (dkt #'s 41 & 42) on July 9, 2009, and those Motions are now ripe for decision.

## II.    STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might

---

[2] As a result of Court-ordered mediation, the Parties agreed to settle Count I of Continental's counterclaim, which sought damages from Liberty for breach of contract. See Report of Mediation Disposition (dkt # 45).

affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. ANALYSIS

#### A. Standard for Determining Duty to Defend

Florida law applies to this diversity case. See Hartford Accident & Indem. Co. v. Beaver, 466 F.3d 1289, 1291 (11th Cir. 2006). Under Florida law, an insurer's duty to defend is based entirely "on the facts and legal theories alleged in the pleadings and claims against the insured." James River Ins. Co. v. Ground Down Engineering, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008). The duty to defend does not hinge on the true facts that gave rise to the cause of action against the insured, the insured's version of the facts, or the insured's defenses to the underlying complaint. See State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004). In determining whether an insurer owes a duty to defend, the Court must look to the most recent amended complaint, and "[i]f the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit." Id.

Any doubt about the duty to defend must be resolved in favor of the insured. See id. The duty to defend is triggered even if the facts alleged in the underlying complaint only potentially fall within the scope of the policy. See Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d. 1319, 1322 (S.D. Fla. 2009). If there is no duty to defend, then there is no duty to indemnify, as the duty to defend is much broader than the duty to indemnify. See id. (citing Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 443 (Fla. 2005)). If a complaint alleges multiple grounds for liability, some falling within insurance coverage and others not, the insured must still defend the entire suit, "at least until such time as the covered portions of the claim have been eliminated from the suit." Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 815 (Fla. 1st Dist. Ct. App. 1985).

B.   The Policy Terms

The Policy at issue here is a standard commercial general liability ("CGL") policy. CGL policies "are designed to protect an insured against certain losses arising out of business operations." See U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007). CGL policies have undergone several major revisions over the years, expanding the scope of insurance and narrowing exclusions. See id. at 877-80. The Liberty Policy contains language typical of post-1986 CGL policies. CGL policies provide coverage "not only for accidental events, but also injuries or damages neither expected nor intended from the standpoint of the insured." Id. at 883. CGL policies typically exclude contract claims arising out of an insured's defective work or product. Id. at 885.

The Policy covers "'property damage' that is caused by an occurrence that takes place in the 'coverage territory'" during the policy period. Policy, Pl.'s Ex. C, at 68 (dkt # 1-3). "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting

loss of use of that property," or "[l]oss of use of tangible property that is not physically injured."

Id. at 80.

The Policy contains several exclusions, three of which are at issue here. Exclusion j(5) excludes coverage for:

> j. Damage to Property
>
> "Property damage" to:
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations . . .

Id. at 71. Exclusion j(6) excludes coverage for:

> j. Damage to property
>
> "Property damage" to:
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Id.[3] There is an exception to exclusion j(6), which states that "[p]aragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard." Id. The "products-completed operations hazard" is defined, in relevant part, as including "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' . . . ." Id. at 80.

Lastly, exclusion l excludes coverage for:

> l. Damage to your work
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

---

[3] The Policy defines "your work" in pertinent part as "[w]ork or operations performed by you or on your behalf." Policy, Pl.'s Ex. C, at 81 (dkt # 1-3).

8

Id. at 71. There is an exception to exclusion 1 which states that the exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Id.

The above exclusions are standard in post-1986 CGL policies. Florida courts have consistently held, and this Court agrees, that the language of these exclusions is unambiguous and therefore enforceable according to its terms. See Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling Co., Inc., No. 08-60697-CIV-COHN, 2009 WL 700246, at *5 (S.D. Fla. March 17, 2009); Oak Ford Owners Ass'n v. Auto-Owners Ins. Co., 510 F. Supp. 2d 812, 819 (M.D. Fla. 2007); Am. Equity Ins. Co. v. Van Ginhoven, 788 So.2d 388, 391 (Fla. 5th Dist. Ct. App. 2001); U.S. Fire Ins. Co. v. Meridian of Palm Beach Condominium Ass'n, Inc., 700 S.2d 161, 162 (Fla. 4th Dist. Ct. App. 1997).

### C. Scope of Coverage

Before determining whether the Policy's exclusions preclude coverage, it must first be determined whether the underlying complaint states facts that potentially fall within the scope of the Policy's coverage. Assuming for purposes of summary judgment that Continental's activities constituted an "occurrence" within the meaning of the Policy, coverage is provided "only . . . if the 'property damage' was caused by the occurrence,' and not subject to any other coverage exclusions." Assurance Co. of Am. v. Lucas Waterproofing Co., Inc., 581 F. Supp. 2d 1201, 1209 (S.D. Fla. 2008) (Moore, J.). Liberty does not contest that the claims here are for "property damage," caused by an "occurrence." Liberty does suggest that there may be no coverage here because the claims in the underlying complaint are not for damages that Continental could become legally obligated to pay. See Def.'s Resp. at 3 (dkt # 49). The underlying suit may indeed ultimately determine that the claims against Continental are not claims for which Mark

9

Yacht can recover. That, however, is irrelevant for purposes of the instant Motions, because the duty to defend may be triggered regardless of whether the underlying complaint is meritorious or ultimately results in a finding of liability. See, e.g., Gov't Emps. Ins. Co. v. Sellers, 667 F. Supp. 850, 852 (S.D. Fla. 1987). The underlying complaint contains sweeping allegations of defects throughout the property, and, resolving all doubts in favor of Continental, it can plausibly be read to assert claims against Continental for "property damage" caused by an "occurrence." Therefore, there is no genuine issue of material fact that the claims in the underlying complaint potentially fall within the scope of the Policy's coverage.

D. Exclusions j(5) and j(6)

Exclusions j(5) and j(6) "operate in tandem, excluding coverage for property damage arising from ongoing work and for repair or restoration of property because of deficient work . . . [t]hese exclusions do not apply, however, to off-premises property damage arising from *completed* work." Oak Ford Owners Ass'n, 510 F. Supp. 2d at 819 (citing Van Ginhoven, 788 So. 2d at 391) (emphasis in original). Liberty, as the insurer, bears the burden of showing that a particular exclusion applies. See id. at 820.

In determining whether exclusions j(5) and j(6) apply here, the Court is faced with facts unlike typical duty to defend cases involving CGL policy exclusions. In cases like Van Ginhoven or American Cutting, a contractor is hired to build a specific building or perform a discrete task within a defined area. Here, Continental had several different kinds of obligations under the Contract—to maintain, manage, and operate—and those obligations extended to the entire premises of the Mark Yacht condominium complex. Liberty argues, in effect, that Continental's "work" therefore encompassed the entire Project and all damage thereto. See Def.'s Resp. at 3 (dkt # 49) ("[S]ince any damage to the common elements is Continental's

work, Liberty has no duty to defend Continental"). But the Project itself, and the damage to it, cannot be synonymous with Continental's "work." If this were true, the Policy would be a nullity, as would the CGL policies of any other company that contracts to manage or maintain an entire facility.

With respect to exclusions j(5) and j(6) it is Liberty's burden to specifically identify, with reference to the underlying complaint, what "particular part of real property" Continental was working on that was damaged by Continental's operations. Liberty has made no such specific showing. The underlying complaint, with its very general defect allegations, does not describe what part of the Project Continental was working on that experienced defects or deficiencies, or what particular actions by Continental gave rise to those deficiencies. The most specific language in the underlying complaint describes affirmative defenses asserted by the engineer which allege that Continental failed to reasonably maintain the condenser water piping system. See id. at ¶ 124. Even reading the underlying complaint to allege that Continental's work on the condenser piping system was incorrectly performed and resulted in damage—meaning, therefore, that claims for the damage to that system are excluded under j(5) and j(6)— this is only one claim out of the many for which Mark Yacht seeks redress in the underlying suit. As long as the potential for coverage exists, the duty to defend the entire suit is triggered, and Liberty cannot prevail on its motion for summary judgment.

E. Exclusion l

Exclusion l, the "your work" exclusion, applies to damage in the "products-completed operation hazard," which is to say, off-premises damage arising from work that Continental had completed. Exclusion l does not foreclose Liberty's duty to defend, largely for the same reasons that exclusions j(5) and j(6) do not apply: Liberty has not shown that the facts alleged in the

underlying complaint implicate Continental only for damage to, and arising out of, Continental's work. Furthermore, Liberty has not shown that the allegations in the underlying complaint only involve off-premises damage, or work that was "completed." The Policy states, in pertinent part, that work is deemed completed at the earliest of "when all of the work called for in your contract has been completed;" "when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;" or "when that part of the work done at a job site has been put to its intended use . . ." Pl.'s Ex. C, at 80 (dkt # 1-3). The first two definitions of "complete" do not apply because Continental was to maintain the facility on an ongoing basis throughout the duration of the Contract, and therefore "all of" Continental's work would not have been completed until the termination of the Contract. As to the third definition, there are insufficient facts in the underlying complaint to determine whether any part of Continental's "work" had been put to its intended use. Liberty has therefore failed to show that Continental's work was "completed" for purposes of the Contract, and thus failed to show that exclusion l applies.

Genuine issues of material fact remain as to the applicability of the Policy's exclusion provisions. Accordingly, summary judgment may not be granted in favor of Liberty.

## IV.   CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant/Counter-plaintiff Continental's Motion for Summary Judgment (dkt # 41) is GRANTED and Plaintiff/Counter-defendant Liberty's Motion for Summary Judgment (dkt # 42) is DENIED. Liberty is obligated under the terms of its insurance policy to defend Continental in the underlying suit. Proceedings with respect to Liberty's duty of indemnification remain STAYED pending the resolution of the underlying suit.

The Court retains jurisdiction to conduct further proceedings with respect to the duty of indemnification in the event that Continental is found liable in the underlying suit, at which time either Party may promptly move to reopen this action. The Clerk of Court is directed to administratively CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 25th day of August, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record